## COMMONWEALTH vs. ICARFENS HILAIRE.

No. 00-P-131.

Middlesex. March 5, 2001. - June 11, 2001.

Present: ARMSTRONG, C.J., BROWN, JACOBS, RAPOZA, & GRASSO, JJ.[1]

Further appellate review granted, 434 Mass. 1107 (2000).

*Practice, Criminal,* Plea. *Alien.*

A District Court judge incorrectly denied a criminal defendant's motion to withdraw his admission to sufficient facts to warrant findings of guilty of several offenses arising from the theft of a motor vehicle, which had resulted in convictions and sentence, where the judge, who alluded to un-described effects on the defendant's "status" in the United States, failed to orally advise the defendant, in the words of G. L. c. 278, § 29D, that his conviction could have the consequences of "deportation, exclusion from admission to the United States, or denial of naturalization"; further, the inclusion of the "Tender of Plea or Admission/Waiver of Rights" form in the record of the proceedings below, standing alone, could not be the source of the statutory warnings to the defendant. [819-825] BROWN, J., concurring in the result. GRASSO, J., dissenting.

COMPLAINTS received and sworn to in the Somerville Division of the District Court Department on July 2, July 11, and July 14, 1996, respectively.

A motion to vacate an admission to sufficient facts and for a new trial, filed on March 11, 1998, was heard by *Paul P. Heffernan,* J.

*Matthew Campbell* for the defendant.

*Kathleen A. Murphy,* Assistant District Attorney, for the Commonwealth.

RAPOZA, J. In Federal custody and facing the prospect of

---

[1]After circulation of this opinion to the other Justices of the Appeals Court, the panel was expanded. *Commonwealth* v. *Clements,* 51 Mass. App. Ct. 508, 508 n.1 (2001). See *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993).

deportation to his native Haiti,[2] the defendant moved in District Court to withdraw his admissions to sufficient facts on several offenses[3] and requested a new trial, pursuant to Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). In that motion he claimed that he was not given proper immigration warnings, see G. L. c. 278, § 29D, as appearing in St. 1996, c. 450, § 254, and that his admissions to sufficient facts were not intelligently made. The defendant's motion was denied after a hearing by the judge who had accepted his admissions, and he appealed. We focus on the adequacy of the immigration warnings and, concluding that they were not given to the defendant as required by G. L. c. 278, § 29D, we reverse.

The requirements imposed by the courts on a judge who accepts a guilty plea are many, but those imposed by the Legislature are few. Significantly, one such provision is that the court give immigration warnings to a defendant who tenders a plea.[4] Indeed, in G. L. c. 278, § 29D, the Legislature sets out the very words that the judge should employ:

> "If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States."

"The Legislature has put the three required warnings [deportation, exclusion from the United States, denial of naturalization]

---

[2] The defendant immigrated to the United States when he was six years old. He was seventeen at the time of the offenses that are the subject of this appeal. At a point following his admissions, he was taken into custody by the Immigration and Naturalization Service pending a deportation hearing.

[3] The charges brought against the defendant arose from three incidents during July, 1996, in which he and other youths were allegedly involved in stealing a motor vehicle and damaging the windows of and breaking into several others. The defendant's admissions to sufficient facts encompassed all the pending charges. He was sentenced to one year in a house of correction, fifty-eight days to be served, with the balance of the sentence suspended for one year, with probation.

[4] For purposes of the defendant's motion, an admission to sufficient facts is treated as the "functional equivalent of a guilty plea." *Commonwealth* v. *Rzepphiewski*, 431 Mass. 48, 50 n.3 (2000). See *Commonwealth* v. *Duquette*, 386 Mass. 834, 837-838 (1982).

in quotation marks, and each of them is required to be given so that a person pleading guilty knows exactly what immigration consequences his or her guilty plea may have." *Commonwealth v. Soto*, 431 Mass. 340, 342 (2000). As Justice Abrams clearly enunciated, "[a] defendant must be advised of all three consequences of his plea. The words of the statute do not permit any other interpretation." *Ibid.* See *Commonwealth v. Desorbo*, 49 Mass. App. Ct. 910, 911 (2000) (better practice is for the judge to give warnings as specified by the Legislature).

The statute also provides that, where the court has failed to give the immigration warnings to a defendant whose guilty plea may have one of the enumerated consequences, "the court . . . *shall* vacate the judgment, and permit the defendant to withdraw the plea of guilty." G. L. c. 278, § 29D (emphasis supplied). See *Commonwealth v. Mahadeo*, 397 Mass. 314 (1986) (defendant not warned that conviction could have adverse consequences on his immigration status entitled to have the judgment of conviction vacated); *Commonwealth v. Soto, supra* (defendant who was undergoing Federal removal proceedings and had not been advised that he could be excluded from admission to the United States following conviction entitled to allowance of motion to withdraw guilty plea). Compare *Commonwealth v. Jones*, 417 Mass. 661 (1994) (motion to withdraw guilty plea allowed where Commonwealth could not satisfy its burden of proving that judge who accepted original plea had advised the defendant that deportation could be a consequence of his conviction).

In the present case, the judge who accepted the defendant's admissions failed to comply with the statute when he conscientiously, but inadequately, told the defendant: "If you're not a full United States citizen, a finding of guilty in these cases could affect your status; do you understand that?"[5] The judge's words neither conformed to the language of G. L. c. 278, § 29D, nor did they address the three potential consequences embedded in the statute. It is not enough that, in some general way, a defendant "know[s] his guilty plea may have immigration consequences." *Commonwealth v. Soto*, 431 Mass. at 342. The judge's allusion to undescribed effects on the defendant's

---

[5]The record indicates that the defendant's response was inaudible.

"status" in the United States failed to convey the important message specified by the Legislature: that a noncitizen who pleads guilty runs a significant risk of suffering three serious and specific immigration consequences. The purpose of G. L. c. 278, § 29D, is to ensure that, while the noncitizen who pleads guilty does so at his own peril, he should not do so without fair warning.

The dissent acknowledges that the judge's spoken words did not communicate the immigration warnings elaborated in G. L. c. 278, § 29D, but nonetheless contends that a written advisement of those warnings is sufficient to comply with the statute.[6] We disagree.

A fair reading of G. L. c. 278, § 29D, clearly indicates that the Legislature intended that a defendant be orally advised by a judge of the immigration consequences of his plea. The statute states that "[t]he court shall not accept a plea of guilty . . . unless the court advises [the] defendant" of the three warnings. The defendant, in turn, "shall not be required at the time of his plea to disclose to the court his legal status in the United States." The statute further states that, "[i]f the court fails so to advise the defendant, and he later at any time shows that his plea and conviction may have one of the enumerated consequences, the Court . . . shall vacate the judgment, and permit the defendant to withdraw the plea of guilty."

Not only does G. L. c. 278, § 29D, disclose a legislative intent that the warnings be given orally by a judge, but there

---

[6]The "Tender of Plea or Admission/Waiver of Rights" form (set forth in the Appendix), upon which the dissent relies, does not purport to be a judicial advisement of the immigration consequences of a defendant's plea. Rather, the form contains a preprinted statement that the defendant has consulted with his attorney, with whom he has discussed his "constitutional and other rights." Following a lengthy recitation of rights understood and waived, the form states, using the words of the statute, that the defendant is aware that if he is not a citizen of the United States his conviction could have one of the enumerated immigration consequences. Immediately following is a section in which the defendant's attorney certifies generally that she has explained to the defendant the pertinent provisions of law and other rights that bear on his plea. Even if this mutual acknowledgment by client and counsel signifies that counsel supplied the defendant with information concerning the immigration consequences of his plea, that recitation does not satisfy the absolute statutory requirement that the immigration advisement contained in G. L. c. 278, § 29D, be provided by "the court."

also is no provision in the statute for the warnings to be administered in written form. The statute plainly contemplates that the judge shall orally advise the defendant of the immigration consequences of his tender during the plea colloquy. See *Commonwealth* v. *Soto*, 431 Mass. at 342 ("General Laws c. 278, § 29D . . . requires the *judge* to *advise* a person pleading to criminal charges as follows: [statutory advisements] . . . . It is incumbent on the *judge* to *notify* a defendant that there are three specific consequences to a plea" [emphasis supplied]); *Commonwealth* v. *Lamrini*, 27 Mass. App. Ct. 662, 667 (1989) ("The better practice would have been for the *judge* to *read* directly from the statute . . . ." [emphasis supplied]); *Commonwealth* v. *Desorbo*, 49 Mass. App. Ct. at 911 (referring to "the advice that G. L. c. 278, § 29D, requires *judges* to *give* to a defendant tendering a plea of guilty . . . . As the Legislature has set out and placed in quotation marks the exact text of what *judges* should *say* on such occasions, and it is only one sentence, the proper practice is to give the warning as the Legislature has written it" [emphasis supplied]); *Commonwealth* v. *Ciampa*, 51 Mass. App. Ct. 459, 462 (2001) (a defendant's conviction shall be vacated "if, at the time of his guilty plea, the *judge* fails to *warn* him of the three immigration consequences of his conviction" [emphasis supplied]).

The inclusion of the "Tender of Plea or Admission/Waiver of Rights" form in the record of the proceedings below changes nothing, although the dissent suggests otherwise. The importance of a written record arises in the context of the statutory provision that "[a]bsent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." G. L. c. 278, § 29D. Thus, the utility of a written record is in its tendency to demonstrate that the warnings were in fact given orally by the judge conducting the colloquy. See *Commonwealth* v. *Rzepphiewski*, 431 Mass. 48, 52-53 (2000); *Commonwealth* v. *Podoprigora*, 46 Mass. App. Ct. 928, 929 (1999). See also *Commonwealth* v. *Ashmon*, 434 Mass. 1005 (2001). In this case there is no question that the judge failed to do so. Nor is there any independent significance to the inclusion of the printed form in the record where no case has ever held that such a writ-

ing, standing alone, can be the source of the statutory warnings to the defendant.

When the judge gives the statutory advisement in the course of an oral plea colloquy, he can determine that the defendant has both received and understood the warnings. Although there is no requirement that the judge make specific findings in that regard,[7] the use of a written form referencing the words of the statute and signed by the defendant is an inadequate substitute for giving the advisement orally. During a colloquy, the judge has the opportunity to observe and interact with the defendant and, in circumstances where an interpreter may be required, can communicate the warnings to the noncitizen defendant with greater assurance than can be supplied by the preprinted monolingual form found in the Appendix.[8]

The importance of ensuring that the immigration warnings are properly conveyed to defendants is underscored by recent changes in Federal immigration law. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, which amends the Immigration and Nationality Act, imposes new and significantly harsher sanctions on noncitizens as a consequence of even relatively minor criminal convictions. Noncitizens are subject to mandatory deportation for numerous additional offenses under a broadened definition of "aggravated felony" which now includes charges with a possible sentence of one year or more, whether actually imposed or suspended.[9] 8 U.S.C. §§ .1101(a)(43)-(48)(B) (Supp. V 1999).

---

[7]We note that the plea judge also signed the preprinted tender of plea form, certifying that the defendant was advised of the statutory warnings in the language of the statute that was lacking from his oral colloquy. His certification is enigmatic in light of the fact that he failed to give the warnings. We observe that the dissent does not rely on the judge's signed statement in support of its position.

[8]As correctly stated in the dissent, the defendant has raised no issues concerning his literacy or his fluency in English. Nonetheless, we note that reliance on a printed form alone as the sole source of the statutory advisement to defendants is likely to generate numerous postconviction challenges on such grounds.

[9]The triggering event for a deportation is normally a conviction which, under Federal law, includes a finding of guilt after trial before a judge or jury, a plea of guilty or an admission to sufficient facts to warrant a finding of guilt. So long as the judge imposes some form of punishment, penalty, or restraint on the noncitizen's liberty, even if the imposition of the sentence is suspended,

An even more dramatic aspect of the law is its retroactive application to a prior offense even though the charge, when disposed of, was not defined as an "aggravated felony," so long as it would now fall within the definition of that term. 8 U.S.C. § 1101(a)(43). See *Commonwealth* v. *Ciampa, supra* (deportation proceedings commenced against an Italian noncitizen in 1998 based on a suspended sentence and a two-year period of probation imposed by the Superior Court in 1983). See also *Sousa* v. *Immigration & Naturalization Serv.*, 226 F.3d 28, 33 (2000) (noncitizen who came to the United States from Portugal in 1971 at the age of two subject to deportation proceedings in 1998 based on a suspended sentence imposed by the Superior Court in 1990). The retroactive application of the law to such charges applies whether or not the noncitizen served his previous sentence or punishment and regardless of whether he has a subsequent record of convictions. 8 U.S.C. § 1101(a)(43).

Finally, immigration law judges have no discretion to decline deportation based on the noncitizen's length of residence in the United States, employment, family ties, or the fact that he may have children who are citizens. In effect, hardship relief which could previously be provided under section 212(c) of the Immigration and Nationality Act is no longer available in such cases. 8 U.S.C. § 1182(c) (Supp. V 1999).

Against this backdrop, the warnings required by G. L. c. 278, § 29D, are no small thing. If correctly administered, they might provide the noncitizen his last opportunity to consider whether a change of plea is in his best interest. A defendant can make such a determination only if he has been fully advised by the judge, pursuant to the statute, of the considerable consequences that could follow.

It is understandable that in the hurly-burly of our increasingly busy District Courts a premium is placed on the prompt disposition of cases. Yet it is precisely in such an environment that we must ensure that important things are done right.[10]

The consequences of a guilty plea to a noncitizen can be dra-

the requirement of a conviction has been satisfied. 8 U.S.C. § 1101(a)(48)(A)-(B).

[10]In asserting the sufficiency of written notice of the statutory warnings, the dissent opens the door to the routine use of preprinted forms to advise

conian, a fact well recognized by the Legislature when it mandated the judicial warnings contained in G. L. c. 278, § 29D. Accordingly, before a judge accepts an admission or guilty plea, he or she must orally advise the defendant, in the words of the statute, that his conviction could have the consequences of "deportation, exclusion from admission to the United States, or denial of naturalization." The disposition of criminal charges before a judge should not be a trap for the unwary noncitizen.

The order denying the defendant's motion to withdraw his admissions to sufficient facts is reversed. The judgments are reversed, the findings of guilty are set aside, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

BROWN, J. (concurring in the result). I do not believe it is necessary to decide whether the preprinted form may permissibly supplement defective immigration warnings. All that needs to be done here is to focus on the absence of evidence in the record that the defendant was made aware of the elements of the crimes to which he was admitting. See *Commonwealth* v. *Correa,* 43 Mass. App. Ct. 714, 717, 719 (1997). "There must be an explanation by the judge or defense counsel of the elements of the crimes charged or an admission by the defendant to the facts constituting those crimes . . . . This requirement can be satisfied in one of several ways: (1) by the judge explaining to the defendant the elements of the crime; (2) by counsel's representation that she has explained to the defendant the elements he admits by his plea; or, (3) by the defendant's stated admission to facts recited during the colloquy which constitute

---

defendants of the immigration consequences of their pleas. Although acknowledging that "[t]he better practice is to conduct an oral colloquy," the dissent suggests an exception that is bound to become the rule, especially if the use of a form is perceived as saving bench time and expediting dispositions. In that event, the giving of immigration warnings during the oral colloquy is likely to disappear, a result hardly contemplated by the Legislature when it enacted G. L. c. 278, § 29D, or foreshadowed by the jurisprudence that has developed around the statutory warnings.

the unexplained elements." *Id.* at 717. See *Commonwealth* v. *Robbins*, 431 Mass. 442, 450-451 (2000); *Commonwealth* v. *Barry*, 51 Mass. App. Ct. 9, 11 n.2 (2001).

According to the transcript of the hearing on the admissions to sufficient facts, there was no explanation by the judge of the elements of the charged crimes, nor was there an assertion by defense counsel that she had explained the crimes to the defendant. While the prosecutor did recite the facts the Commonwealth would attempt to prove at trial, the defendant never admitted to, or even acknowledged, these alleged facts. Compare *Commonwealth* v. *DeCologero*, 49 Mass. App. Ct. 93, 97-98 (2000). Contrast *Commonwealth* v. *Baker*, 46 Mass. App. Ct. 915 (1999). Rather, after the recitation, the judge asked defense counsel — not the defendant — if she had "[a]ny questions regarding these matters." She responded that she did not. The judge then proceeded to discuss disposition with the prosecutor and defense counsel.

This is not a case where the charges, through repetition and some explanation, became self-evident. See *Commonwealth* v. *Wiswall*, 43 Mass. App. Ct. 722, 723 (1997); *Commonwealth* v. *DeCologero, supra.* The judge did not state all the crimes to which the defendant was admitting. He did mention two, i.e., larceny of a motor vehicle, and operating after suspension. However, the simple, unadorned stating of these charges was not clear or specific enough adequately to inform the defendant of the elements of the charged crimes. See *Commonwealth* v. *Pixley*, 48 Mass. App. Ct. 917, 918 (2000); *Commonwealth* v. *Barry, supra* at 10 (finding error because "the defendant heard only a recitation of the names or titles of [the charged] crimes, and was taken to have 'stipulated' to unstated facts supposed to 'base' the complaints").

Finally, the portions of the preprinted "Waiver of Rights" forms that defense counsel and the plea judge signed, thereby asserting they had informed the defendant of his various rights, lack the specificity to qualify as an affirmative statement that either defense counsel or the judge had informed the defendant of the precise nature or elements of the charges against him.

The forms state only that either the judge or defense counsel[1] has informed the defendant of "the above-stated provisions of law regarding the defendant's waiver of jury trial and other rights so as to enable the defendant to tender his or her plea of guilty or admission knowingly, intelligently, and voluntarily." See Appendix. This lack of specificity is especially telling where we have the benefit of reviewing a transcript[2] from which it is quite clear that little, if anything, actually was said regarding the precise elements of the charged crimes.[3]

In short, this case comes down to the defendant boldly "stating," by the means of signing preprinted forms, that he is "aware" of the nature and elements of the charges against him with no colloquy by the judge on the nature and elements of the offenses, no specific certification by counsel on the point, no indication as to the extent of his "awareness," and no disclosure of the source of the information upon which his "awareness" is based. This is not sufficient.

GRASSO, J. (dissenting). The majority reverses the defendant's convictions upon the ground that the defendant was not advised of the immigration warnings conformably with G. L. c. 278, § 29D. The concurrence reaches the same result, although on

---

[1]The statements attested to by the judge and defense counsel are similar in the aspects most relevant here. See Appendix.

[2]In general, a transcript of the actual proceedings should be accorded greater evidentiary weight than a preprinted form which serves only to memorialize, in a general way, what is thought to have occurred. Those cases in which the courts have discussed what constitutes a "record" of proceedings in the context of G. L. c. 278, § 29D, have done so of necessity, i.e., in the absence of a transcript. See *Commonwealth* v. *Rzepphiewski*, 431 Mass. 48, 52-54 (2000), and cases cited. See also *Commonwealth* v. *Ashmon*, 434 Mass. 1005 (2001).

[3]The preprinted language on the form states "I am aware of the nature and elements of the charge or charges to which I am entering my guilty plea or admission." See Appendix. The form does not require the defendant to certify whether counsel, the judge, or some other entity is the source of his enlightenment. Moreover, the form does not require him to articulate the nature and extent of his "awareness." In passing, I make the additional observation that such a form might well pose a problem to a defendant whose first language is not English.

the ground that the defendant's admissions to sufficient facts[1] in the primary session[2] of the Somerville District Court were not intelligently made. I respectfully dissent as, in my view, reversal is not warranted on either basis upon the facts of this case.

The intelligence of the defendant's admissions and the sufficiency of the immigration warnings are conceptually distinct issues. However, neither the admissions made nor the warnings given in this case occurred in isolation, but in the context of a rather typical proceeding in the primary session of the District Court. Consideration of all that transpired, in context, including the proffer, the "Tender of Plea or Admission/Waiver of Rights" form[3] submitted (see Appendix), the colloquy, and the judge's acceptance of the admissions, establishes both that the defendant was advised of the immigration warnings and that his admissions were intelligent for constitutional purposes.

"Th[e] plea bargain was not executed in a vacuum. The defendant was represented by, and had the advice of, counsel throughout." *Commonwealth* v. *Grant*, 426 Mass. 667, 671 (1998). The charges against the defendant involved three separate incidents of breaks into motor vehicles, larceny, and damage to property occurring over a two-week period. As the transcript of the hearing reflects, the defendant was not a stranger to the court system. The judge was aware that the charges were an extension of his juvenile record. At the first call of the case, the defendant, his counsel, and the prosecutor appeared before the judge and proposed admissions to sufficient

[1]Admissions to sufficient facts, such as were made here, are a historical vestige of District Court practice, see *Commonwealth* v. *Duquette*, 386 Mass. 834, 837-838 (1982), with continuing utility and significance. See Mass.R. Crim.P. 12, 378 Mass. 866 (1979); Dist./Mun.Cts.R.Crim.P. 4(c) (1996). See also *Commonwealth* v. *Rotonda*, 434 Mass. 211, 216-217 (2001). Unlike *Rotonda*, the admissions to sufficient facts made here did not result in a continuance without a finding, but convictions and a sentence.

[2]The de novo trial system was abolished in the District Court Department for adult defendants as a result of amendments to G. L. c. 218, § 26A, made by St. 1992, c. 379, § 139. Any action commenced on or after January 1, 1994, as these were, is governed by the one-trial system. See St. 1993, c. 12, § 9.

[3]See Dist./Mun.Cts.R.Crim.P. 4(c). See also *Commonwealth* v. *Grant*, 426 Mass. 667, 672 n.4 (1998).

facts upon a disparate recommendation.[4] Pursuant to the provisions of Dist./Mun.Cts.R.Crim.P. 4(c), the defendant, his counsel, and the prosecutor submitted to the judge, for each of three complaints, a "Tender of Plea or Admission/Waiver of Rights" form promulgated by the Chief Justice of the District Court Department. On separate portions of each proffered form, the defendant signed, and his counsel certified, the following: the defendant indicated, inter alia, that he was aware of the nature and elements of the charges; defense counsel certified that she had explained to the defendant his jury trial rights (pursuant to G. L. c. 218, § 26A) and other rights. Just above the defendant's signature the form states: "I understand that if I am not a citizen of the United States, conviction of this offense *may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States*" (emphasis added). (See Appendix.) The judge rejected the disposition the defendant tendered and proposed one involving a greater sentence.[5] The defendant and his counsel conferred and appeared a second time before the judge. The defendant indicated his willingness to admit to sufficient facts and accept the judge's proposed disposition.

The judge then engaged in a colloquy *directly* with the defendant and explained the disposition contemplated. He also explained the rights that the defendant was forgoing by offering his admissions, including his right to a jury trial, his right to confront and cross-examine witnesses, and his privilege against self-incrimination.

Prior to considering the factual basis for the charges, the judge made oral reference to the immigration warnings that

---

[4]The defendant's proposed disposition was a six-month "split" sentence to a house of correction, with eleven days to be served and the balance suspended for one year, concurrent on all three complaints. The prosecutor proposed a one-year "split" sentence, with ninety days to be served and the balance suspended for two and one-half years, together with restitution, concurrent on all three complaints.

[5]The judge indicated that he would impose a one-year "split" sentence to a house of correction, with fifty-eight days to be served and the balance suspended for one year, together with restitution, concurrent on all three complaints.

were contained in the forms the defendant had signed and proffered:

> JUDGE: "If you're not a full United States citizen, a finding of guilty in these cases could affect your status; do you understand that?"
>
> THE DEFENDANT: "[inaudible]."[6]

With respect to the factual basis for the charges, the colloquy went thus:

> JUDGE: "For the record, further I must be satisfied that you are making these admissions because you feel you would be found guilty at trial and that there is no other reason; is that so?"
>
> THE DEFENDANT: "[inaudible]."

There followed the prosecutor's detailed recitation of the evidence the Commonwealth would have introduced at trial. Upon completion of the factual recitation, the colloquy continued, with the judge directing this question to defense counsel:

> JUDGE: "Any questions regarding these matters . . . ?"
>
> DEFENSE COUNSEL: "No questions on the facts, your Honor."

Having set forth what transpired, I address first the intelligence of the admissions to sufficient facts, an inquiry of constitutional dimension, and then compliance with the immigration warnings, a matter of statutory import.

1. *The intelligence of the admissions to sufficient facts.*

The finality attaching to an admission to sufficient facts under the "defendant-capped" plea or admission procedures of Mass. R.Crim.P. 12, as amended, 397 Mass. 1215 (1987), and Dist./

---

[6]The transcript of the colloquy is replete with inaudibles at each juncture when the defendant was answering the court's questions. In context, it is evident that the defendant's response, although recorded as inaudible, was in the affirmative. A judge is entitled to rely on his own observations and discernments in concluding that the defendant understands all the questions. See *Commonwealth* v. *Leate*, 367 Mass. 689, 696 (1975); *Commonwealth* v. *Curry*, 6 Mass. App. Ct. 928, 929 (1978). The defendant does not suggest otherwise. See Mass.R.A.P. 8(b)(3)(v), 388 Mass. 1110 (1983) (setting forth the requirements relative to unintelligible cassettes).

Mun.Cts.R.Crim.P. 4(c)[7] renders an admission to sufficient facts the functional equivalent of a guilty plea and requires a colloquy to determine whether the admissions were intelligent and voluntary. See *Commonwealth* v. *Duquette*, 386 Mass. 834, 844-846 (1982); *Commonwealth* v. *Mahadeo*, 397 Mass. 314, 316 n.2 (1986). To reach the result that the defendant's admissions were not intelligent because the colloquy was inadequate to apprise him of the elements of the charges, the concurrence examines each piece of the defendant's admissions in isolation, ignoring the entirety of the colloquy and its context. The concurrence also implicitly creates unnecessary strictures for "acknowledging" or "admitting" facts.

Whether a plea or admission is "intelligent" involves three determinations that must be apparent from the record of the proceeding.[8] The defendant must have knowledge of (1) the ele-

---

[7]In recognition of the volume of cases coming before the District and Municipal courts, the rules establish a mechanism to dispose of cases expeditiously upon terms satisfactory to the defendant, with the approval of the judge. District/Municipal Courts Rule of Criminal Procedure 4(c) allows a defendant, prior to the filing of the pretrial conference report and prior to electing whether to proceed to trial before a judge or a jury, to dispose of charges by a plea, admission, or other disposition satisfactory to him, with or without the agreement of the prosecutor. The proposed disposition is set forth on a form promulgated therefor, such as the "Tender of Plea or Admission/ Waiver of Rights" form discussed *infra*. If the court rejects the disposition requested, the defendant is allowed to withdraw his plea or admission. In rejecting a proposed disposition, the court may indicate what disposition would be imposed, and a defendant may request a disposition on those terms. The mechanism is "defendant-capped" in the sense that a defendant knows in advance that he will not receive a greater punishment than agreed to, either initially, or with the modifications proposed by the judge. See G. L. c. 278, § 18.

[8]"As a general proposition of constitutional law, a guilty plea may be withdrawn or nullified if it does not appear affirmatively that the defendant entered the plea freely and voluntarily. *Boykin* v. *Alabama*, 395 U.S. 238, 242-243 (1969). See *Brady* v. *United States*, 397 U.S. 742, 748 (1970); *Commonwealth* v. *Foster*, 368 Mass. 100, 106 (1975). Rule 12(c)(3) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 866 (1979), requires that a defendant be informed on the record of the three constitutional rights that are waived by a guilty plea: the right to trial, the right to confront one's accusers, and the privilege against self-incrimination. See *Boykin* v. *Alabama, supra* at 243; *Commonwealth* v. *Lewis*, 399 Mass. 761, 764 (1987). Moreover, the plea record must demonstrate either that the defendant was advised of the elements of the offense or that he admitted facts constituting the unexplained

ments of the charges against him, see Mass.R.Crim.P. 12(c)(5)(A), 378 Mass. 869 (1979); *Commonwealth* v. *Fernandes*, 390 Mass. 714, 719 (1984); (2) the consequences of the plea or admission, see *Commonwealth* v. *Morrow*, 363 Mass. 601, 605 (1973); and (3) the procedural protections he forgoes by pleading guilty or admitting to sufficient facts. See *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997). See also *Commonwealth* v. *Duquette*, 386 Mass. at 841. The defendant herein does not maintain that he lacked knowledge of the procedural protections he was forgoing or the consequences of his admissions. Rather, he questions whether he had real notice of the true nature of the charges to which he was admitting. *Commonwealth* v. *Sullivan*, 385 Mass. 497, 509 (1982).

The constitutional requirement that the record demonstrate the defendant's knowledge of the elements of the charges against him may be satisfied in one of several ways. See *Henderson* v. *Morgan*, 426 U.S. 637, 647 (1976). There must be (1) an explanation by the judge of the elements of the crime; or (2) a representation that defense counsel has explained to the defendant the elements he admits by his plea or admission[9]; or (3) the defendant's statements admitting facts constituting the unexplained elements, or stipulations to such facts. *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343-344 (1978), cert. denied, 439 U.S. 1120 (1979). *Commonwealth* v. *Colantoni*, 396 Mass. 672, 679 (1986). "The defendant's affirmative response to the facts as stated by another, if those facts contain the neces-

---

elements. See *Henderson* v. *Morgan*, 426 U.S. 637, 646 (1976); *Commonwealth* v. *Colantoni*, 396 Mass. 672, 678-679 (1986). Finally, the plea record must demonstrate that the defendant pleaded guilty voluntarily and not in response to threats or undue pressure. See *Commonwealth* v. *Foster, supra* at 107." *Commonwealth* v. *Lopez*, 426 Mass. 657, 660 (1998). See *Commonwealth* v. *Robbins*, 431 Mass. 442, 447 (2000).

[9]As observed in *Commonwealth* v. *Colantoni*, 396 Mass. 672, 679 n.5 (1986): "A credible, specific representation by trial counsel that he has explained the elements of the crime to the defendant may, in some cases, standing alone, satisfy the constitutional requirements of *Henderson*. . . . While it may be acceptable, this is not the best, nor the most reliable, mechanism by which the defendant's plea may be shown to be free, voluntary, and intelligent." See *Commonwealth* v. *Robbins*, 431 Mass. 442, 452 n.13 (2000).

sary elements of the crime[10], is sufficient to satisfy the *Henderson* test." *Ibid.*, citing *Commonwealth* v. *Soffen*, 377 Mass. 433, 442 (1979). See *Commonwealth* v. *Swift*, 382 Mass. 78, 84 (1980).

These admissions were intelligent because, in the course of the colloquy, the defendant responded affirmatively that he was admitting to the facts because he would be found guilty at trial and for no other reason. See *Commonwealth* v. *Correa*, 43 Mass. App. Ct. at 717. The colloquy was ample, not sparse. Compare *Commonwealth* v. *Hernandez*, 42 Mass. App. Ct. 780, 785 (1997). The admissions were the product of a plea negotiation, the factual basis for which doubtless was predicated upon the police report and other discovery material required to be provided to a defendant by Mass.R.Crim.P.14, 378 Mass. 874 (1979).

Surely the adequacy of the admissions does not turn on the timing of the defendant's affirmative response to the court's inquiry whether he was admitting because he believed he would be found guilty at trial and for no other reason. To contend that the defendant's admissions were deficient because they occurred moments *before* the prosecutor recited the factual basis for the charges would be Pickwickian. Nor does the validity of the admissions turn upon the judge's having directed a confirmatory question to defense counsel, in the defendant's presence, at the conclusion of the factual recitation.

In addition to the colloquy, in the "Tender of Plea or Admission/Waiver of Rights" forms submitted to the judge, as observed earlier, the defendant indicated that he was aware of the nature and elements of the charges and defense counsel certified that she had explained to the defendant his jury trial rights (pursuant to G. L. c. 218, § 26A) and other rights.[11] I do not suggest, nor should it be inferred, that a written form, stand-

---

[10]The defendant does not contend that the factual recitation was insufficient to satisfy the Commonwealth's burden of proving, beyond a reasonable doubt, every element of the crimes charged. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979); *Commonwealth* v. *Hill*, 20 Mass. App. Ct. 130, 131 (1985).

[11]The defendant's portion of the waiver of rights form states: "I am aware of the nature and elements of the charge or charges . . ." Defense counsel's certification is more ambiguous, stating: "I have explained to the defendant

ing alone, satisfies the constitutionally mandated inquiry into whether the defendant understands the true nature of the charges against him. "An admission to sufficient facts is not a substitute for . . . [observance of] procedural requirements." *Commonwealth* v. *Duquette*, 386 Mass. at 844. See *Commonwealth* v. *Hernandez*, 42 Mass. App. Ct. at 785-786. "The colloquy provides a check that defense counsel has done his duty in discussing the choice with the defendant and that the defendant has participated in and comprehends the decision to waive the jury." *Ibid.*, quoting from *Commonwealth* v. *Pavao*, 423 Mass. 798, 804 (1996). However, *in addition to* considering the defendant's answers to the questions posed during the colloquy, the judge was entitled to rely upon the information contained in the forms. See *Commonwealth* v. *Hernandez*, 42 Mass. App. Ct. at 785 (a judge may rely upon the information contained in the jury waiver form signed by the defendant and in defense counsel's certificate when determining whether the defendant's jury waiver is made voluntarily and intelligently).

In sum, the colloquy provides record evidence that the defendant's admissions were intelligent. The signed form, while neither necessary, nor sufficient in itself, provides additional support for this conclusion.

2. *The immigration warnings.* I agree that the judge did not orally advise the defendant of the three aspects of the immigration warnings set forth in G. L. c. 278, § 29D.[12] See *Commonwealth* v. *Soto*, 431 Mass. 340, 342 (2000). Looked at generously, the judge's oral colloquy advised him of only one of the three immigration consequences. A defendant must be advised of all three: (1) deportation; (2) exclusion of admission to the United States; and (3) denial of naturalization. *Ibid.* However,

---

the above-stated provisions of law regarding the defendant's waiver of jury trial *and other rights* . . ." (emphasis added). Even a more explicit written pronouncement of advisement by defense counsel may not substitute for a colloquy. See *Commonwealth* v. *Colantoni*, 396 Mass. at 679 n.5; *Commonwealth* v. *Robbins*, 431 Mass. at 452 n.13.

[12]General Laws c. 278, § 29D, continues to be a shoal upon which pleas and admissions to sufficient facts run aground years after the proceeding at issue because, in the press of business, judges fail to heed the simple expedient of reading *verbatim* to each defendant from the quoted section of the statute in the course of taking a plea or admission and documenting that fact in the record.

hard cases make bad law. The parade of the horribles that might befall other unwitting immigrants just does not fit these facts. This defendant does not maintain that he did not, or could not, read the alien rights advisement in the "Tender of Plea or Admission/Waiver of Rights" form. Thus, the issue reduces to whether the statute requires in all instances, that the immigration warnings advisement be given orally by the judge. On the facts of this case, I would hold that the *written* advisement that set forth the statutory consequences accurately, and was communicated to and acknowledged by the defendant, sufficed.[13]

Unlike the constitutional requirement of an oral colloquy to establish that a plea or admission is intelligent and voluntary, there is no obligation on a judge to explain to a defendant immigration consequences that are "collateral and contingent consequences of a plea," *Commonwealth* v. *Hason*, 27 Mass. App. Ct. 840, 843 (1989), except as expressly provided by G. L. c. 278, § 29D. General Laws c. 278, § 29D, mandates only that "the court advise[]" the defendant of possible immigration consequences, with no express directive as to how the advice must be given.[14] The Legislature could have specified that the warning be given personally by "the judge" or "orally." It did not. The words of the statute are explicit and unambiguous. "We are not free to ignore or to tamper with that clear expression of legislative intent." *Commonwealth* v. *Jones*, 417 Mass. 661, 664 (1994). See *Commonwealth* v. *Soto*, 431 Mass. at 342.[15]

The "Tender of Plea or Admission/Waiver of Rights" form

---

[13]The better practice is to conduct an oral colloquy. In addition to the obvious benefit of a judge being certain that the defendant did not sign a form without taking the time to read it, an oral colloquy also avoids questions as to the defendant's literacy or problems of interpreters certifying and documenting translation of the content of the writing to a defendant not conversant in English. The defendant raised no such contentions in his motion to vacate his admission.

[14]The statute states in pertinent part: "The *Court* shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the *Court* advises such defendant . . ." (emphasis added).

[15]I agree that the warnings are "no small thing," and that the consequences of a plea or admission to sufficient facts might be viewed as draconian. Under current immigration law, a "conviction" includes an admission to sufficient facts where the judge has ordered the imposition of some form of punishment, penalty, or restraint on the alien's liberty, even when no guilty finding

used here establishes that, in addition to the judge's incomplete oral advisement, the court advised the defendant in writing of the immigration consequences of his admissions. The form constitutes part of the record of the proceeding.[16] See *Commonwealth* v. *Rzepphiewski*, 431 Mass. 48, 52-53 (2000); *Commonwealth* v. *Podoprigora*, 46 Mass. App. Ct. 928 (1999). It cannot be rightly said that this defendant was not advised and aware when he entered his admissions that his convictions could have any one of the immigration consequences. See *Commonwealth* v. *Pryce*, 429 Mass. 556, 559 (1999).

I would affirm.

.

---

("conviction") has been imposed. See § 322 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. § 1101 (a)(48)(A)-(B) (Supp. V 1999). Notwithstanding this change in Federal law, our Legislature has not expanded upon the advisement required by G. L. c. 278, § 29D, to require that the court advise that a continuance without a finding upon an admission to sufficient facts might be the basis for immigration consequences.

[16]As set forth in the form, the plea judge's certifications distinguish between (1) his findings, based upon his oral colloquy with the defendant, as to those rights that the defendant waived knowingly, intelligently, and voluntarily and (2) the statutory advisement as to the immigration warnings. With respect to the latter, the certification does not purport to state that the advisement was the result of a colloquy.

The certification may be fairly criticized as mechanistically stating the obvious: because the form contains the advisement, the certification assures no more than that a defendant who signs it has been "given" written notice in the terms of the statute. However, the plea judge's certification is not "enigmatic." As previously noted, a judge need not ignore the information contained in the form. See *Commonwealth* v. *Hernandez*, 42 Mass. App. Ct. at 785. While I agree that a better way to "give" the notice is by combining oral with written advisement, in my view the failure to do so is not fatal here.